UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| FREDDY DE JESUS SANCHEZ, *individually and on behalf of all others similarly-situated,* et al.<br><br>_Plaintiffs,_<br><br>v.<br><br>COSAN CONSTRUCTION CORP., et al.<br><br>_Defendants._ | No. 22-CV-8420 (KMK)<br><br>ORDER & OPINION |

<u>Appearances</u>:

James Patrick Peter O'Donnell, Esq.
Kew Gardens, NY
*Counsel for Plaintiffs*

Avraham Y. Scher, Esq.
Joseph & Norinsberg, LLC
New York, NY
*Counsel for Plaintiffs*

Katelyn Marie Schillaci, Esq.
Roman Mikhail Avshalumov, Esq.
Helen F. Dalton & Associates, P.C.
Kew Gardens, NY
*Counsel for Plaintiffs*

Brian L. Gardner, Esq.
Jason Robert Finkelstein, Esq.
Cole Schotz P.C.
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Plaintiffs Freddy De Jesus Sanchez, Francisco Gonzalez Cardenas, Samuel Martinez,

Antonio Cuevas Mauricio, Cruz Leyva Jovencio, Pascual Chavez Dela Rosa, and Angel

Sebastian Eusebio Cortes ("Plaintiffs")[1] brought this Action against Cosan Construction Corp., AMCG, Inc., Terence Ferguson, and Aaron King (collectively, "Defendants"), pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), the New York Labor Law ("NYLL"), and the New York Codes, Rules and Regulations ("NYCRR"). (*See* Compl. ¶¶ 106–129.) Before the Court is a settlement agreement application on behalf of the Plaintiffs. (*See* Letter from Roman Avshalumov, Esq. to Court (Oct. 14, 2024) ("Settlement Agreement Application") (Dkt. No. 34).) For the following reasons, the Application is denied without prejudice to renewal.

## I. Background

### A. Factual Background

As described in the Complaint, Plaintiffs performed various construction and masonry-related duties for Defendants. (Compl. ¶¶ 29, 35, 42, 48, 53, 58, 63, 69, 75.) Plaintiffs allege that they did not receive overtime pay as required by the FLSA and NYLL, (*id.* ¶¶ 34, 40, 46, 52, 62, 68, 74), and in some cases that they performed uncompensated work, (*id.* ¶¶ 41, 47). Plaintiffs further allege that Defendants failed to post or provide required notices and to keep records mandated by state law. (*Id.* ¶¶ 81–84.)

Plaintiffs assert various wage and hour violations based on their allegations. Specifically, Plaintiffs allege that Defendant: (1) willfully failed to pay Plaintiffs overtime wages for work exceeding forty (40) hours per week at a wage rate of one and a half (1.5) times the regular wage, in violation of the FLSA, NYLL, and NYCRR, (*id.* ¶¶ 110, 115); (2) willfully failed to pay Plaintiffs' wages for hours worked in violation of the FLSA and NYLL, (*id.* ¶¶ 118,

---

[1] Norberto Garcia Lucio and Angel Marcelino Dionicio were also Plaintiffs in this Action when it was first filed. (Compl. 1 (Dkt. No. 1).) However, their claims have since been dismissed with prejudice. (*See* Stipulation & Order of Dismissal (Dkt. No. 43).)

123); (3) failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, in violation of the NYLL, (*id.* ¶ 126); and (4) failed to provide Plaintiffs with wage statements upon each payment of wages, in violation of the NYLL, (*id.* ¶ 129).  Accordingly, Plaintiffs seek to recover unpaid wages, unpaid overtime wages, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, and request a declaratory judgment against Defendants.  (*Id.* at 18.)[2]

B.  Procedural Background

Plaintiffs filed this putative collective action on October 3, 2022.  (*Id.*)  After the Court granted an extension of time, Defendants filed an Answer to the Complaint on December 13, 2022, denying most of Plaintiffs' allegations.  (*See* Answer (Dkt. No. 16).)  The Parties eventually asked the Court to adjourn proceedings in light of an anticipated settlement.  (*See* Letter from James O'Donnel, Esq. to Court (Apr. 18, 2023) (Dkt. No. 21).)

On October 14, 2024, the Parties filed their Motion for Settlement Approval with the fully executed Settlement Agreement attached.  (*See* Settlement Agreement Application; *id.*, Ex. ("Proposed Settlement Agreement") (Dkt. No. 34-1).)  On July 17, 2025, the Parties filed a joint Stipulation and Order of Dismissal as to two individuals, Norberto Garcia Lucio and Angel Marcelino Dionicio, seeking to dismiss the claims asserted by those individuals with prejudice. (*See* Proposed Stipulation & Order (Dkt. No. 42).)  The Parties represented that these two individuals' claims were "barred by *res judicata* as their claims [had been] settled, released, and dismissed" in another action.  (Letter from Katelyn Schillaci, Esq. to Court (July 8, 2025) 1 (Dkt.

---

[2] Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper-right corner of each page. The Court does so here because the Complaint does not number the relevant paragraphs.

No. 37); *see also* Letter from Jason R. Finkelstein, Esq. to Court (July 9, 2025) 1–2 (Dkt. No. 39) (representing that the individuals' claims had been released and dismissed with prejudice in an earlier action).)  The Court dismissed the claims asserted on behalf of Norberto Garcia Lucio and Angel Marcelino Dionicio on July 18, 2025.  (Stipulation & Order of Dismissal.)

## II.  Discussion

Under Federal Rule of Civil Procedure 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute."  *See* Fed. R. Civ. P. 41(a)(1)(A).  "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  *See* Fed. R. Civ. P. 41(a)(2).  The Second Circuit has held that the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect."  *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (internal quotation marks omitted), *cert. denied*, 136 S. Ct. 824 (2016).  Consequently, "the [P]arties must satisfy the Court that their agreement is 'fair and reasonable.'"  *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015); *see also Velasquez v. SAFI-G, Inc.*, No. 15-CV-3068, 2015 WL 5915843, at *1 (S.D.N.Y. Oct. 7, 2015) (substantially same).

When assessing a proposed settlement for fairness, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement."  *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quotation marks omitted); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016) (same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov.

6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

As multiple courts have recognized, although a court should consider the totality of the circumstances, the most significant factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotation marks omitted); *see also Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (same); *Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL 2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same). Conversely, factors which weigh against finding a settlement fair and reasonable include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (quotation marks omitted); *see also Villalva-Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same); *Garcia*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same).

Making this determination "is thus an information intensive undertaking," *Camacho*, 2014 WL 6985633, at *2, and "the parties must provide the court with enough information to evaluate the bona fides of the dispute," *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187,

2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (quotation marks omitted).  To this end, courts

require information regarding:

> "the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to [the] plaintiffs . . . , the bases of estimates of [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee award."

*Id.* (first alteration in original) (internal quotation marks omitted) (quoting *Lopez v. Nights of*

*Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015)).

B.  Analysis

1.  Settlement Fairness

a. Good Faith

The Court is satisfied that the Settlement Agreement was negotiated competently, in good

faith and without fraud or collusion.  The Parties' joint submission represents that their

negotiations were fair, and each party has been represented by experienced counsel throughout

the proceedings.  (*See* Settlement Agreement Application 6 ("Plaintiffs are represented by

counsel who specialize in FLSA and NYLL matters . . . . Defendants are also represented by

counsel with substantial experience in FLSA and NYLL matters."); *see also id.* (describing the

process as "continued arm's length bargaining," the relationship between the parties as

"professional," and the parties' engaging in a multi-hour mediation process).  The Court has no

reason to doubt that the Parties did, in fact, engage in a good faith settlement process.

b. Similarly Situated Employees

The first *Wolinsky* factor—i.e., the presence of similarly situated employees—was not

addressed in the Parties' submission.  (*See generally* Settlement Agreement Application.)  This

factor weighs slightly in favor of settlement.  The proposed settlement agreements are limited to

each Plaintiff's respective claims and would not encompass claims on behalf of any similarly

situated employees. *Castillo v. AVI Food Sys. Inc.*, No. 24-CV-6591, 2025 WL 1949135, at *3 n.3 (S.D.N.Y. July 16, 2025) (reasoning that this factor weighed in favor of approval where the agreement would not reach any other employees in the plaintiff's position). (*See* Proposed Settlement Agreement 6.) Although the existence of the earlier-settled case that included former plaintiffs Norberto Garcia Lucio and Angel Marcelino Dionicio suggests claims may have existed on behalf of some similarly situated employees, no other employees have come forward in this case. *See Montes v. Cnty. Comfort Home Sols., Inc.*, No. 23-CV-7579, 2024 WL 5004676, at *4 (S.D.N.Y. Dec. 6, 2024) (reasoning that both the absence of other employees coming forward, and a settlement being limited to the plaintiff, each are "factors that support approval of the proposed settlement"). Further weighing in favor of settlement are the facts that the Court "is not aware of a [broader] history of FLSA non-compliance by th[e] employer[s]," and the case does not prevent any particularly unique legal issues that would "outweigh the benefits of settlement" here. *Nash v. Countywide Carting, LTD*, No. 19-CV-9138, 2022 WL 602998, at *3 (S.D.N.Y. Mar. 1, 2022); *see also Ash v. Crossdale*, No. 20-CV-6207, 2021 WL 6550090, at *2 (W.D.N.Y. Aug. 17, 2021) (substantially same).

### c. Release Provision

"[T]he FLSA is a uniquely protective statute," *Cheeks*, 796 F.3d at 207, and courts will not approve settlement agreements that contain overly broad release provisions that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," *id.* at 206 (wholly quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181, to illustrate "potential for abuse in [FLSA] settlements"); *see also Pascual v. Three Diamond Diner Corp.*, No. 21-CV-3333, 2023 WL 1518513, at *4 (S.D.N.Y. Feb. 3, 2023) ("[R]eleases must generally be limited to wage and hour

7

issues . . . ."); *Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) ("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action.").

To that end, releases must generally be limited to wage and hour issues, *see Cheeks*, 796 F.3d at 206, and "may include claims not presented and even those which could not have been presented, but only when the released conduct arises out of the identical factual predicate as the settled conduct," *Nights of Cabiria*, 96 F. Supp. 3d at 181 (footnote and quotation marks omitted).  In light of this standard, "a number of judges in this District refuse to approve any FLSA settlement unless the release provisions are limited to the claims at issue in this action." *Larrea v. FPC Coffees Realty Co.*, No. 15-CV-1515, 2017 WL 1857246, at *3 (S.D.N.Y. May 5, 2017) (alteration adopted and quotation marks omitted).  Broad releases are problematic in FLSA proposed settlement agreements, in part because "courts have a duty to police unequal bargaining power between employees and employers." *Flood v. Carlson Rests. Inc.*, No. 14-CV-2740, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015).

The Parties' submission likewise does not address this factor.  (*See generally* Settlement Agreement Application.)  Nevertheless, it appears that the release of claims under the Proposed Settlement Agreement is limited to those claims and demands that were asserted in this Action. (*See* Proposed Settlement Agreement 6 ("[A]ll claims brought under the Complaint . . . by Plaintiffs against . . . Defendants[] . . . shall be deemed settled, satisfied and resolved.").) Although the Agreement appears at one point uses language that suggests a more-sweeping release of claims, by purporting to reach "all . . . actions . . . which Plaintiffs ever had or now have, or which Plaintiffs hereafter can, shall or may have for, upon or by an reason of any matter . . . whatsoever without limitation arising out of Plaintiffs' employment by Defendants, their

8

termination thereof, and/or the negotiation and/or execution of this Agreement," that broad language is clearly cabined by the narrow phrase that it modifies.[3] (*Id.* at 6–7.) *See* 11 Richard A. Lord, Williston on Contracts, §32:10 at 447 (4th ed. 2025) ("When general and specific clauses conflict, the specific clause governs the meaning of the contract." (footnote omitted)); Restatement (Second) of Contracts § 203 (1981) ("[I]n case of conflict the specific or exact term is more likely to express the meaning of the parties with respect to the situation than the general language."). This narrower phrase specifies that the release is limited to claims based on the facts "alleged in the Complaint filed in the Action." (Proposed Settlement Agreement 7.) *See similarly Perez v. Ultra Shine Car Wash, Inc.*, No. 20-CV-782, 2022 WL 2129053, at *5

---

[3] The relevant portion of the Agreement reads, in full:

In consideration of the payments to be provided by Defendants as described in the Agreement, Plaintiffs, for themselves and their heirs, executors, administrators and their respective successors and assigns, **HEREBY RELEASE AND FOREVER DISCHARGE**, to the maximum extent permitted by law, Defendants, any insurers of the Defendants, and Defendants' respective parent corporations, stockholders, subsidiaries, affiliates, divisions, successors and assigns, their respective current and former officers, owners, directors, members, employees, representatives, trustees and agents, whether as individuals or in their official capacity, and each of their respective successors, assigns and attorneys, of and from all or any manner of actions, causes and causes of action, suits, debts, obligations, damages, complaints, liabilities, losses, covenants, contracts, controversies, agreements, promises, and expenses (including attorneys' fees and costs), extents, executions, claims and demands whatsoever at law or in equity ('claims'), which were alleged in the Complaint filed in the Action, specifically including those under the Fair Labor Standards Act and New York Labor Law, and their associated regulations concerning alleged unpaid wages, record-keeping violations and failure to provide proper wage statements, which Plaintiffs ever had or now have, or which Plaintiffs hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever without limitation arising out of Plaintiffs' employment by Defendants, their termination thereof, and/or the negotiation and/or execution of this Agreement.

(Proposed Settlement Agreement 6–7 (emphasis in original).) This Release is not the model of clarity, but it appears that the final two clauses are meant to modify the phrase "all or any manner of actions . . . which were alleged in the Complaint."

(S.D.N.Y. June 14, 2022) (approving release "from all actions concerning wage and hour matters including any and all claims arising under the FLSA, the NYLL, and the Wage Theft Prevention Act" (alterations adopted)); *Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751, 2017 WL 2778029, at *3–4 (E.D.N.Y. June 26, 2017) (approving settlement agreement that included a release of all claims that "arise out of or relate to the facts, acts, transactions, occurrence, events or omissions alleged in the Lawsuit or which could have been alleged in the [a]ction"). Accordingly, the clause conforms to the requirement that the "released conduct arises out of the identical factual predicate as the settled conduct." *Nights of Cabiria*, 96 F. Supp. 3d at 181 (quotation marks and footnote omitted).

### d. Fairness and Reasonableness

To assess whether the settlement amounts are fair and reasonable, the Court must consider each Plaintiff's maximum potential for recovery. *Leonardo v. Reza Fast Food, Inc.*, No. 20-CV-8879, 2022 WL 2440975, at *2 (S.D.N.Y. July 5, 2022) ("When assessing the fairness of a settlement amount . . . courts . . . consider a maximum possible recovery . . . ." (quotation marks omitted)).

In the Proposed Settlement Agreement, the Parties propose that Defendants pay $120,000 to settle all the claims asserted in this matter against Defendants. (Settlement Agreement Application 5.) In the joint application for approval of the settlement, Plaintiffs' counsel takes the position that Plaintiffs could recover in the range of $100,000 to $230,000 in unpaid wages, liquidated damages, and recovery for a wage notice violation. (*Id.* at 4.) If those projections are accurate, this recovery amount may well be acceptable, given the amounts regularly approved in other cases by Courts in New York. *See McPherson v. Look Ent. Ltd.*, No. 23-CV-4273, 2025 WL 43165, at *3–4 (E.D.N.Y. Jan. 7, 2025) (permitting a settlement amount equivalent to 8.5%

of the plaintiffs' best-case-scenario recovery); *Caccavale v. Hewlett-Packard Co.*, No. 20-CV-974, 2024 WL 4250337, at *18–19 (E.D.N.Y. Mar. 13, 2024) (permitting a settlement that made up 16% of the best-case-scenario recovery, and collecting cases); *Krasnansky v. JCCA*, No. 22-CV-6577, 2023 WL 6141240, at *3 (S.D.N.Y. Sept. 20, 2023) (approving net recovery representing 31% of Plaintiff's total alleged damages).

Unfortunately, the Parties have "provide[d] no supporting declarations or exhibits substantiating the accuracy of the calculations or the sufficiency of the amount awarded to Plaintiff." *Abreu v. Torti Food, Corp.*, No. 20-CV-10643, 2023 WL 5051885, at *2 (S.D.N.Y. July 14, 2023); *see also Lopez*, 96 F. Supp. 3d at 177 ("The parties' submission lacks also any declarations, affidavits or exhibits substantiating its arguments. In the absence of such information, the Court cannot discharge its duty to ensure that the proposed settlement is fair and reasonable." (footnote omitted)); *Pascual*, 2023 WL 1518513, at *3 ("Defendants have produced records that undermine Plaintiffs' wage and hour and overtime theories."). Prior to approving a settlement agreement, the Court must have "enough information . . . to examine the bona fides of the dispute." *Mamni v. Licetti*, No. 13-CV-7002, 2014 WL 2971050, at *1 (S.D.N.Y. July 2, 2014) (quotation marks and citation omitted). Generally, the employer must "articulate the reasons for disputing the employee's right to a minimum wage or overtime," and the employee "must articulate the reasons justifying his entitlement to the disputed wages"; in the event that the Parties dispute the computation of wages, the Parties "must provide each party's estimate of the number of hours worked and the applicable wage." *Id.*; *see also Nights of Cabiria*, 96 F. Supp. 3d at 176–77 (rejecting proposed settlement in part on the basis that the parties failed to provide an "estimate of the number of hours worked or the applicable wage" and where the submission "lack[ed] also any declarations, affidavits or exhibits substantiating its arguments").

11

The Parties have not satisfied this requirement. Although Plaintiffs have made representations as to the relevant number of hours worked and the hourly rates, these representations are insufficient to constitute a "a clear explanation as to how the maximum allowable damages were calculated." *Tapia v. Mount Kisco Bagel Co. Inc.*, No. 18-CV-2864, 2018 WL 4931542, at *3 (S.D.N.Y. Oct. 10, 2018). For instance, Plaintiffs describe their allegations as to the hours worked each week during broad time periods and their hourly rates, but offer no specific calculations. (*See, e.g.*, Settlement Agreement Application 2 ("On the average, Plaintiff [Francisco Gonzalez Cardenas] worked approximately fifty-eight (58) hours or more hours each week from in or around August 2020 until in or around May 2021. . . . Plaintiff alleged he was entitled to approximately 18 hours of overtime pay at the "time-and-a-half" rate of pay for each week of his employment, from in or around August 2020 until in or around May 2021. Furthermore, Plaintiff was not compensated at all for his last week of employment.").) And despite describing the approximate hours each Plaintiff worked per week, the Parties' submission does not clearly state the number of weeks that *any* Plaintiff worked for Defendants, it merely identifies the months that the Plaintiffs are alleged to have started and stopped their employment. (See *id.* at 2–4.) Accordingly, the Court cannot verify the amounts described in the joint submission.

For their part, Defendants have failed to make any estimate at all. They offer only general statements that "records maintained in the ordinary course of business" reflect "Plaintiffs' alleged hours worked and payment thereon does not comport with the documentary evidence reflecting significantly fewer hours worked and/or unpaid, if any." (Settlement Agreement Application 4.) This, too, is insufficient to permit the Court to discharge its duty in evaluating the fairness of the settlement amount. *See Tapia*, 2018 WL 4931542, at *3 (rejecting

12

an application in part because "[the d]efendants have stated only that they 'argue that [the p]laintiff worked fewer overtime hours per week, and that he was paid correctly' for those hours, but do not clearly state their position as to how many hours [the p]laintiff worked or the applicable wage").

The amount offered may very well be an appropriate assessment of the respective probability of success for each side, but the Court lacks the information to conclude that the potential recovery was reasonably calculated.  Therefore, the Parties must submit to the Court a more detailed explanation of the potential recovery for the Plaintiffs.  "At a minimum," this submission should include "evidence as to . . . the bases of estimates of plaintiffs' maximum possible recovery[ ] [and] the probability of plaintiffs' success on the merits."  *Nights of Cabiria*, 96 F. Supp. 3d at 176.

### e. Attorneys' Fees

Under both the FLSA and NYLL, a successful plaintiff—including one who settles—is entitled to attorneys' fees.  *See Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906, 2015 WL 4006896, at *2 (S.D.N.Y. July 1, 2015) (citing, inter alia, 29 U.S.C. § 216(b), NYLL §§ 198, 663(1)) (analyzing propriety of attorneys' fees).  Although courts may elect to award fees by considering either the lodestar method (the reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended) or the percentage method (a percentage of the total amount recovered by the plaintiffs) "[t]he trend in [the Second] Circuit is toward the percentage method."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (superseded in part on other grounds); *see also Burgos v. JAJ Cont. Furniture Inc.*, No. 23-CV-3739, 2024 WL 3834147, at *4 (S.D.N.Y. Aug. 14, 2024) (same).  But even where attorneys' fees are sought pursuant to the percentage of the fund method, "counsel must submit evidence

13

providing a factual basis for the award." *Wolinsky*, 900 F. Supp. 2d at 336; *see also Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records."). A proper fee request thus includes "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Nights of Cabiria*, 96 F. Supp. 3d at 181 (footnote and quotation marks omitted). The Court must also determine the reasonableness of the hourly rate by considering the "prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012).

In the proposed settlement, Plaintiffs' counsel requests fees totaling $33,371.00 or one-third of the amount of the settlement remaining after expenses. (Settlement Agreement Application 6.) The Parties' submissions as to attorneys' fees are woefully insufficient: counsel has submitted neither contemporaneous billing records, nor even a copy of the provision of the retainer agreement that purportedly establishes the contingency fee. (*See generally* Dkt.; Settlement Agreement Application.) Indeed, counsel has not provided any supporting materials—not even an affidavit or declaration consistent with the assertions made in the Parties' request. *Cf. Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13-CV-3234, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (approving fees of one-third of recovery based on supporting affidavit). Accordingly, the Court cannot approve the requested settlement. *See Singh v. MDB Constr. Mgmt., Inc.*, No. 16-CV-5216, 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (rejecting a settlement agreement for failing to provide contemporaneous documentation to support attorneys' fee request); *Cucul v. Major Cleaning, Inc.*, 761 F.Supp.3d 545, 551 (E.D.N.Y. 2025) (same). The Parties should supplement their submissions with

14

materials to support the requested attorneys' fees. *See Salas v. Leo's Bagels Hanover Square LLC*, No. 21-CV-1728, 2022 WL 2384153, at *2 & n.1 (S.D.N.Y. July 1, 2022) (noting the court's prior orders that the parties provide a copy of an asserted contingency agreement and explaining that counsel ultimately "failed" to provide a copy of their retainer consistent with the rate that they represented in their submissions).

III.  Conclusion

For the reasons set forth above, the Parties' Application is denied without prejudice.  The Parties are directed to resubmit their application with materials that would allow the court to evaluate both the reasonableness of the settlement amount and the fee request under *Cheeks*. These materials should be submitted no later than May 1, 2026.

SO ORDERED.

Dated:   April 3, 2026
         White Plains, New York

KENNETH M. KARAS
United States District Judge